which are to be heard in tandem. I understand that counsel have an amazement with respect to oral argument, so that we'll argue both cases which are substantially the same together. That's right. Hold on one second. Thank you, Your Honor. I'm Dan Ackman, arguing for the appellate, so I'll with David Goldberg. May it please the court. In 2019, this court held that the Taxi and Limousine Commission's post-suspension practice denied suspended taxi drivers due process of law. The city's constitutional violations were long and systemic. Since then, we have focused on a remedy that would reduce the volume of erroneous suspensions. But the reforms proposed by the city... Did we say that there was some, that the due process violation consisted of not having the best possible system to reduce erroneous suspensions? I thought we said the due process violation was not having a hearing, a hearing with particular subject matters, and that was the violation, that they didn't provide a reasonable enough hearing. They did have a hearing. Yeah, but it was not good enough because it didn't consider the right subject matters and it didn't tell the taxi drivers what the subject of the hearing would be, and that was the violation. So what more is necessary to remedy that than to provide that kind of hearing, which is what they say they've already done? Well, it wasn't just that, Your Honor. It was also that the hearing judges, to a certain extent, and certainly the chair, who had the ultimate authority to rule, didn't consider the relevant factors in determining whether the driver was a direct and substantial threat to public safety, which is what... See, what I'm saying is, you know, you have a number of proposals. It seems to me that some, at least, of those proposals are things that would have been within the discretion of a district judge to order as part of a remedy. But would you agree with me that what you have to persuade us is that it was an abuse of discretion not to order one, two, three, four, or five of the things that you say? I would agree with that, Judge. Okay. But I think... Although you actually, in your briefing, it was only the first three where you actually said that, where you said they must do this, and then the others were sort of should, and the last one wasn't even a should until the reply brief. You know, I mean, this is a wish list, it seemed to me. You are asking us to put ourselves in the position of the district court and exercise what our discretion would be as to what might be a good remedy, as to at least some of these things. Well, what we're asking is to acknowledge that what the district court ordered doesn't do the trick. Well, but is the reason that you are saying this because of the history of bad behavior on the part of the TLC? That is, let's assume that there isn't this history of bad behavior. Would you, interestingly, cite cases of what we have done in racial, which is a very, very different kind of a thing, in making remedies. What I want to know is, if we look at what they have come up with and what the district court imposed, in itself, is that a violation of procedural due process? Can we possibly say that unless we say these people continue to do now what caused us to get into this litigation that's been going on for so many years? You see what I'm saying? I think I understand the question. I would say you can't just assume and disregard, assume the history away and pretend it's not there. I'm sorry. Hold on a second. This thing seems to have gone off. Just say something. I was saying I don't think you can assume the history away. Hold on a second. Sorry. Can you hear? Yeah, it's on now. Can you hear? Okay. Go ahead. I don't think you can act as if the history is not there, because it is there, and it colors everything that happens now and will happen in the future unless a different remedy is imposed. Because for many years, the healing system that they had set up was totally never- That's all true. On the other hand, during this time, they have taken significant steps. Now, whether those steps are adequate, this isn't a case of what in Italian we call struzionismo, that they have simply failed and have had to be pushed at each point to do everything. They've come a long way. Well, they have not come a long way in the sense that the ultimate goal of the system is to assure that the taxi drivers who are suspended without a hearing have some kind of post-suspension process that is likely to consider a fair- Aren't they doing? Isn't that the case now? It is not the case now, because a tiny percentage of drivers avail themselves of their right to a hearing, and one of the reasons for that, we can only speculate to a certain extent, is because of the history where it was known that they had no chance of succeeding. And there's other things that are also in place still- I'm puzzled by that. First of all, you start off by saying we can only speculate, which I think is true. There's no record on why people don't ask for a hearing, and if we're speculating, one reason is if I were a lawyer, a criminal lawyer for someone who's in this situation, I might well be telling that person, you know, you don't necessarily want to go to a forum where you're going to have to tell your story, and that story will now turn up in the courts in your criminal case. I'd rather you didn't say anything to anybody about this case until the criminal case is settled. Now, that's speculation as to why, but that's kind of rooted in experience. Well, I don't know what experience it's rooted in, because I have not heard anyone say that to me. I don't think there's any record of it. Because we're talking about people who have not spoken. All the people who have not had- Well, doesn't it behoove you to try to make a record on that? I mean, if you're going to come to the district court and say, we really think you have to do this, you know, this would be vital, whatever the this is. I mean, there are a couple of different thises that might respond to that problem. You have to do this because here's the evidence that says people are being deterred from seeking a hearing because of this history. Doesn't somebody have to come in and testify? At least one person? I was deterred? Well, the fact that people are being deterred, there is evidence of that, because we know that there is- I thought there was a declaration from Ms. Ader on that point. From Melissa Ader? No? Yes, there is a declaration from her. And she does say, as Judge Lins said, that one reason is that some criminal lawyers might advise that- due process procedurally has been violated. And therefore, don't you have to come in and say, somehow these remedial actions are insufficient to meet the violation of due process as against meeting them? Isn't that something that somehow you have to do? And I think it is demonstrated, Your Honor, by the fact that less than 5%, really more like 2% of the drivers who are suspended are seeking hearings. If the hearings were effectively, and therefore- and we know also a very large percentage of the drivers who are suspended- What percentage of people seek hearings in general? I mean, we don't have any figures about the people who seek hearings in the cases of cars being seized, which is the nearest analogous case in Justice Sotomayor's opinion when she was here. I mean, what is it that leads us to say that there is something about this that says that what is being done, but on the face of it, would seem to be an adequate exposure? Well, there are three things that say that. One is that a very small percentage of the drivers seek hearings. Two is the drivers who do seek hearings now do tend to win 60% to 70% of the time. So that would suggest that if drivers know that generally, that more drivers would be seeking hearings- That is speculation. It's all speculation, Your Honor. But they have a union, right? What's that? They have a union? No, they don't have a union. There's a Taxpayer Workers Alliance. But I mean, the people who retain- Why isn't it equally- Wait, wait, wait. Let Judge Lynch ask the question. Why isn't there an opportunity for such an organization to publicize this hearing? Look, people are winning a lot. Maybe you should reconsider and ask for a hearing if you're suspended. Why isn't that- You know, I mean, you're asking us to order. And you're asking, again, us to order to say that Judge Sullivan was way beyond his discretion in turning this down because it's absolutely a requirement of due process that the Taxi and Limousine Commission has to prod people to get hearings. But why? If the hearing is something that people really want, and they want it to be meaningful, and now we've got figures suggesting that it is meaningful, at least for those people who chose to take advantage of it because they thought they had good arguments to make at a hearing, let everybody know that. Why is it on the Taxi and Limousine Commission to send out notices? The ultimate goal of due process, as I understand it, that people who are deprived of property or liberty have a fair chance of getting that property back or, in this case, being reinstated. Well, no, there's a balancing. You know, there's the Matthews and Eldridge test, right, the risk of erroneous deprivation against costs, and we come up with something that's reasonable. And, for example, you propose, you know, and I think someone like Professor Sunstein in Chicago would like this, that we give them a nudge, that we schedule a hearing by default. But if 98 percent of the people then cancel the hearing, we've gone through a lot of trouble for not very much. Indeed, even if 80 percent of them do, I would say that's not a very good balance, that we schedule hearings for everyone, which obviously is going to be problematic because where do we schedule them? How do we set this up? And what if they all ask? What if they all don't ask? And only a few of them still continue to do it. So that's not a question of what is the best possible way of getting the most people to have hearings. It's a question of we balance what's sensible. No, I think what we want to have is the most possible drivers who are eventually going to be reinstated, who are not, in fact, a threat to public safety. Those people should not be suspended. But why isn't it equally plausible that there is such a good percentage because those drivers who think they have a case actually ask for a hearing, and those who think that they might lose don't ask for a hearing because going into something of that sort would hurt their criminal record? I don't know. But isn't that just as plausible? Judge, respectfully, I don't think it's at all plausible because the types of drivers who are suspended, there's not a group who have clearly a good case. Most drivers are suspended based on a misdemeanor arrest. It's very often a domestic situation. And there's no way only the ones that can win are coming forward for a hearing because there's not a huge difference between the drivers who are suspended. And there's no way to think, there's no possible reason to think that there is a small group that can win and everyone else has no case. But what evidence did you bring to the district court which would suggest what you are now saying may be the case and that causes us to say that on what was before the district judge, the judgment that he made, which was the hearings have to be held faster, which was something that he did and I can understand that, but making them mandatory or virtually mandatory is something that we don't have the data for. Well, there's other things that can be done. One of the things we've suggested is that the decisions be anonymized and that would solve Judge Lynch's problem as well because then, I've never heard of this happening, that a district attorney then got a record of the TLC hearing and used that against the driver at a criminal case. Never heard that happening. But it couldn't happen, I would think, if the ALJ's decision was anonymized and therefore that problem would go away. I don't think that's the main... Why is that a requirement of due process? That might be a good idea, but why is that something that's required? The issue that I thought we were deciding the last time is whether Judge Sullivan was incorrect to say there was no violation because the hearings were actually matching up with what the statute required or whatever. And we said, no, you have to have a hearing that goes to this particular kind of question. Well, they say they've done that. Judge Sullivan seemed to think that what they did was doing that, made a couple of tweaks or one tweak. But all of these other things might be good policy. They might be things that if the district judge had ordered them would have been within discretion. I'm not sure that we wouldn't have faced an appeal from the Taxi and Limousine Commission saying, this has nothing to do with the actual violation. But let's assume that he could have done those things. But how is it that this must be done to remedy the actual violation which was not giving people a fair hearing? Because when Your Honor says they've done that, I think that's clearly incorrect. Because of that, what they have to do is assure that drivers who are suspended without any kind of hearing and who are likely to be reinstated have a fair chance of reinstatement in the interim. And if they're not seeking hearings, they don't. And you can blame them for that or you can blame the defense lawyers for that. But I would suggest that there is, first of all, many of the taxi drivers at the time that they would have the hearing don't even have defense lawyers because if they're given a desk appearance ticket, they haven't been in court, they haven't been assigned lawyers. So there's that group that doesn't have a lawyer at all. Then you have most taxi drivers don't know lawyers, don't know the law, don't really know what's going on. But they do know, the one thing they do know is the history that was discussed before Judge Sullivan in this trial, in this case. That they know. They know all about the fact that for all these years there wasn't a fair hearing. I suggest that they would know that over the years and the law that comes down, that you had no chance of winning reinstatement. And has any witness testified to what they do and do not know? Anywhere in the record of 15 years of litigation? In Melissa Ader's declaration. But it is very difficult, if not impossible, to determine what people do not know. It's also very difficult, if not possible, to determine what people who we have never spoken to, who have never come to us. I can say in my case, I do some of these hearings, no one's ever come to me and said I'm worried that if I testify. But you see, we're just sitting here totally speculating. We're just pulling out of our hats possible reasons why people don't request hearings. And it seems to me the burden has to be on the plaintiffs to say here's why. Here's how we connect this history to what is an appropriate remedy. And if that's not done, I just don't understand how the district judge can be faulted for saying it doesn't make that much sense to me. There's speculation on both sides as to the reason. I think it's speculation. But you have got the burden. Sorry? You have got the burden. So if there's speculation on both sides, just to go back to your question, it's your burden. But what we don't need to speculate on is the fact that of the roughly 2,000 drivers a year who are suspended without hearings- Can you cite me a case where we or some other court has said that though a hearing is there, that because not enough people seek the hearing, we make that hearing mandatory? No, I cannot cite a case. But this is a very unusual situation on both ends. I also can't cite a case where an administrative agency summarily suspends thousands of drivers a year and has a long history of presenting them with absolutely futile process for reinstatement. But I can cite a situation whenever a criminal arrest, there's automatically a bail hearing. There's an arraignment. That's not a case, but that's a standard process in American law. There are mandatory hearings when, I believe, when a TRL was issued, for example, there is automatically a hearing after that to determine whether the TRL was validly issued. So it's not a foreign concept. So do I understand correctly that the hearings don't just involve TLC as the agency? They involve a number of different other agencies? No, that's not right. I thought they were oath hearings. Well, the oath is the judge. Yes. So the oath hearings involve things beyond TLC as an agency. Is that correct? No. I mean, well, oath as an agency hears many different kinds of cases from the wire. Yes. But the hearings we're talking about involve only the TLC. No, I understand. But, you know, there's so much capacity that an oath judge can or the oath office can accommodate by way of hearings. Is that correct? Yes, but it's a much larger capacity than the city pretends. The oath is an agency that has various courts. Something that's called big oath is the agency that hears these hearings now. But there's also an oath TLC court, or actually they call it the oath TLT court, and that has dozens of judges sitting every day and hears tens of thousands of cases a year. And these cases could be transferred to them. So I don't think there's a big problem of capacity. But I guess my question would be, those people are not under the jurisdiction and direction of the TLC. None of them are. Right. Exactly. No, right. There's an oath taxi limousine tribunal. They're all under the jurisdiction of oaths. Yes. Who hires them, who fires them, who promotes them is not the TLC. Right. It used to be that way. It used to be, and that changed. I am a little bit familiar with the history of this case, as you know. So, but there are, the point is the oath TLT tribunal has many more judges. I believe they still are per diem judges, but they're not hired by the TLC or fired by the TLC. So I say this sheepishly, given the prior argument, that we've kept you well past your time. But you do have some time for rebuttal. So we'll hear from Mr. Davies. Thank you. Mr. Goldberg, you're not, you're not arguing. May please the court. My name is Jameson Davies for the Apoes. This court should affirm the district court's decision largely denying plaintiff's request for additional injunctive belief well beyond what's required to provide due process. The district court had considerable latitude to consider what procedures were necessary to comply with due process and to implement this court's decision on remand. And it did not abuse its discretion by declining to adopt wholesale plaintiff's wish list of rules. Importantly, as we've been discussing, plaintiffs bore the burden of showing their entitlement to injunctive relief clearly and plainly and failed entirely to do so, eliciting almost no evidence in favor of their proposed injunction. And as the discussion evolved, I think it's all clear that it's all based purely on their speculation as to why hearings are not requested and whether or not these remedies. Well, there is Ms. Ader's declaration. There is Ms. Ader's declaration. I think that cuts both ways in one sense because she does indicate that in her experience, some of the drivers are not requesting hearings because they're worried about collateral criminal consequences, not because of any issue with the process of the hearing. As to the sort of lone substantive paragraph, she only really addresses the anonymity request that they have, and she just says that some drivers may... There are other areas in which, because of the history, we have done all sorts of things. I mean, there are areas about voting rights in the South and maybe in the North where despite curative things, we don't say that's enough. We look further, and they are claiming that this is close enough to those areas where more is required than what would normally be allowed. That is required. Because of the history, discrimination of some sort continues, and they don't say anything about who the drivers are, whether their ethnicities and so on are such that they're looking. But that's the force of their claim. It's the only claim. Now, what do you say about that? Two responses to that, Your Honor. First, I would say this case is very different because unlike in those cases where you're remedying a history of past discrimination, your only relief is injunctive and imposing procedures and new desegregation, things like that, that remedy that past discrimination. Here, they are entitled to and are seeking damages remedies for the past denial of due process. So they have a remedy for the previous denials that is separate and apart from the new procedures that we have gone through. But also, and I think more germane, is in cases like Brody, Knox, and Schwartz, which largely they don't address, and even in Crimstock, there was a lengthy history of the procedures that were challenged. The towing had been going on for a long time. Both the seizures in Crimstock and the towing in Knox had been going on for a long time. And those courts never said that the length of the history of this denial of procedural due process had anything to do with the remedy. What they said is that the remedy is to provide due process going forward. And in Knox and Schwartz, this court made clear that the agencies in the states, the governmental agencies that are being challenged, should have the opportunity to implement those procedures on their own without being rewritten or supervised too intensely by the district courts. In Knox, this court overturned a district court order that's pretty similar to this, it's pretty similar to what the plaintiffs are asking for, which was basically granting the plaintiff's laundry list of requests and saying that the procedures of the defendant didn't go far enough. This court said no, they should have the opportunity to evaluate those procedures and make changes in the first instance and then consider whether or not those changes comply with due process. So I think if you look to this court's procedural due process precedents, there's no indication that the length of the history has anything to do with the prospective remedy. Just a point of information. The damages part of the case is still to come? The damages part of the case is still to come. Just recently, Judge Sullivan certified a liability class, declined to certify a damages class, so that the plaintiffs are going to have to present their damages cases on an individual basis. And so there will be presumably hearings for individual plaintiffs who are denied due process. Another point of information. Well, actually, it's about the underlying issue. When the chair on review is required to provide a reasonable basis for rejecting or modifying a recommendation, is there some more elaboration of what is meant by a reasonable basis? There's no more elaboration in the rule of what's meant by a reasonable basis, but I do think there's basically some articulation of the reasoning, and that would also give a driver, if they wanted to take it to an Article 78 proceeding in state court, an opportunity to challenge the underlying rationale that the chair employed in overturning a recommendation. And there is a standard that applies, not so much a standard of review other than reasonable basis, but there's a standard that the oath judge is supposed to apply, right? Correct. Yes, the oath judge has to. The rules are very clear, and they incorporate a lot of what this court identified in the last case as the kinds of things that should be considered. So the oath judge has a very specific set of things to consider. And wouldn't it follow that the chair has to say, no, I disagree with the conclusion of the oath judge about those factors? The chair couldn't say, my reasonable basis is that I just don't think we should suspend everyone or whatever. I mean, there has to be something that would be reasonable in light of the standard that the chair as well as the judge is bound by. I think that's right, Your Honor. My point was only that there's nothing else. Is there anything else? I mean, that may or may not be right, but is there anything in writing that states that, that asserts that? Yeah, I think there's no other specific provision of the rules other than reasonable basis. I think it's fair to read reasonable basis to imply that the chair would be considering the same factors, similar factors that oath is considering, along with maybe agency-wide factors ensuring consistency. The oath judge makes a determination for which there is a standard, and there are rules that the oath judge is supposed to apply and factors to consider, right? Correct. And the chair can only reverse that based on a reasonable basis. Correct. Okay. And I think that's borne out also by the evidence that the chair has largely accepted, since these new rules have gone into effect, recommendations to lift suspensions. And what are the circumstances, if you know, under which the chair has rejected and not accepted the recommendation? I don't believe there were any at the time, in the record at the time the case was filed. I'm not sure if there have been subsequent ones. I'm not sure if there has been any articulation of the reasons for overturning it. Does the chair give reasons? The chair is required to give reasons if she overturns a recommendation to reinstate a driver. If she accepts the recommendation, then the driver is reinstated and there's no obligation to give reasons. And is the current chair someone who has been the chair forever? She's been the chair for a while. I'm not sure exactly how long. Well, but I mean, through all this history, when no one was getting any relief, is it the same chair or a different chair? I'm not sure off the top of my head. I think it is the same chair, or at least she was in the TLC before during the previous proceedings. I can confirm and submit that to the court if needed. I also wanted just to make a couple points about the automatic scheduling. In the cases that we've seen, even where drivers are requesting hearings, about a sixth of the time they're only showing up to the hearings. In most cases, even when they request hearings, a lot of times they don't end up showing up to the hearings. So automatic requesting hearings would just fill Oath's docket with countless numbers of hearings that would never go forward. And given the expedition, it's 10 days' notice for the hearing for Oath, it's going to seriously encumber Oath's ability to do its job and deal with all of these hearings without any real due process benefit to the drivers. And one important thing to bear in mind, which plaintiffs also don't address, is that the height of their showing varies with the severity of the remedy they're requesting. A lot of these remedies, not all of them, but a lot of them are pretty severe. And again, the showing is absolutely minimal. There's no evidence. These are their clients. They didn't bring forward any declaration from any of their clients who were the drivers who would be subject to these procedures. They also represent the Taxi Workers Alliance. They didn't bring any evidence from any member of the Taxi Workers Alliance that would show why these procedures were not being requested. Really, it's just one declaration from a legal aid lawyer who sometimes represents taxi drivers in these cases. So there's really not a sufficient record on which to say that the District Court abused its discretion by not granting the injunction giving them all the relief they requested. Given the length of the arguments, I'm happy to rest on that and urge the Court to affirm unless there are any other questions. Thank you. I've been waiting for you to say that. Thank you very much, Mr. Davies. Thank you, Your Honors. I would just like to make a couple of points in rebuttal. One is that, again, I can see that a lot of what we're saying about the reasons drivers don't have hearings is speculative as to the specific reasons. We don't know what any one driver was thinking when he did not have a hearing. But we do know that the drivers typically have no knowledge of the law. These are taxi drivers. These are not sophisticated people. These are not bankers. They typically are immigrants. 90% of taxi drivers are first-generation immigrants, so therefore might have difficulties with written English or even spoken English. They don't have a lawyer assigned to them when they're suspended. They might or might not have a criminal lawyer who might or might not be willing to advise them on their TLC hearing. And they likely don't understand what the hearing is all about. Again, Mr. Ackman, I understand all of that. But those are precisely the factors that make me wonder whether these remedies have any use. When that person with those disabilities, the driver who has the problems of not understanding the law, et cetera, et cetera, has been arrested, that driver gets a specific notice that says you can have a hearing and explains what the hearing is for. Now, I understand they might not understand it. But I'm having a little trouble understanding why if you had a sign posted somewhere that said basically the same thing, we have these hearings and they're going to be really good hearings from now on, we promise, that is not even relevant to the condition of the driver until he or she gets arrested. Why is that going to be suddenly so easily understood by them? It's the same words, basically, in the sign that is in the letter that's personally addressed, dear taxi driver, right? And if they don't understand it when it really matters to them, why are they going to pay attention to the sign, figure out what that's about, and somehow remember what that sign says when they get the letter that says basically the same thing? I mean, why is this a useful investment? Of course, sufficient notice at the time of suspension is critical and the most important thing. I don't dispute that. I do think that if the knowledge of the hearings being effective was filtered through the taxi driver community, which can be done at basically no cost to the TLC, they could send an e-mail to all their drivers saying this is what we've done, this is what's happening, now you do have a chance, you do have a chance for a fair hearing. Why would they believe that? I mean, it would seem to me that besides the question of who bears the burden or the cost of disseminating this information, wouldn't it be much more credible coming from an organization of drivers than coming from the same TLC that you're saying they don't trust and they can't believe and when they get the letter they're just going to say, oh, this is the same old BS. I mean, I just don't get this is my problem. The organization of drivers I think you're referring to is the Taxi Workers Alliance. They don't have, not every taxi driver is a member of the Taxi Workers Alliance. Not every one of them gets their notices. Yes, but let's assume we buy your thing and make the hearings mandatory in a sense. A taxi driver who is an immigrant, who is skeptical of the system, gets something from this group that has suspended them, which says you have a hearing which you can go to. I would have thought that that would be the most frightening thing of all. That it would look as if these people are trying to do more. Unless they really believe that this is something that is fair and working for them. And if it's that, then we're already okay. I mean, I'm just trying to put myself, perhaps because I was a refugee and an immigrant just as a kid, in what I understood about this place. Well, I can't really put myself into the driver's shoes as whether they might find that frightening. I would think that if they got, first of all, getting a notice that says they can't drive, that's frightening, I would think. They can't pursue their occupation. They can't earn a living. That's a frightening situation. If they got with that, we would like you to come in to tell us why you should not be suspended and that you should be reinstated.  Now, when we said the hearing should be scheduled in every case, we also said they could be canceled in every case. So if a driver does find the prospect of even having a hearing frightening, he or she can cancel it. That's possible. It seems to me you're just relying on this theory, which I think is pretty well-founded in social psychology, that more people will come for the hearing if they're told the hearing exists, and unless you cancel, you should be here on this date, than if they're told you can ask for a hearing. I think that makes good sense. There would be more people going to hearings. I'm not sure that really affects the liberty of the driver, though, to make his or her own decision based on what is frightening and what isn't, right? I mean, if they're told you can have a hearing, if you think that this is unfair and we're going to consider these factors, and if you want to come in and talk about that, you may, versus there's going to be this hearing and you have to come unless you cancel it. I'm not sure that I'm – I think the one is better than the other. Well, I think one will certainly lead to more hearings. It will lead to more hearings, but the goal isn't to have more hearings. No, the goal is to have – The goal is to balance risks of erroneous deprivation against costs and against other factors. So if one of the factors is maximizing driver liberty, if another factor is just not spending a lot of time and resources in scheduling hearings, then as it is, we've heard people don't always show up when they ask for the hearing. I don't think that's true. You don't think it's true? That people don't show up when they ask for a hearing? I've never heard of that. It was in their briefs, and he just said it. Now, maybe it's false, and it's not based on anything in the record. I guess we'll have to look. I think what we want to do here, and I would think the TLC would join us in this goal, is to have drivers who are not, despite being arrested, are not actually a threat to public safety, that they be reinstated. I would think that would be the TLC's goal as well. It's certainly our goal, and I think it's drivers' goal. So the way to do that, if the only way they can be reinstated is through a hearing, is to have a hearing. If we know now that most drivers don't seek a hearing, and we know that most are reinstated, more than 95% are reinstated, and this court defined an erroneous deprivation as one where the driver is ultimately reinstated, then we know that the error rate has barely changed at all by the new system that's in place. But you see, the new system that's in place is the system that's in place in almost every situation where there's a government deprivation. The government says, we're cutting off your welfare check because we think you engaged in fraud. If you want, you can have a hearing. Across the board, of all kinds of deprivations that there are, the remedy is people get to have a hearing, and they get to present their side of the story. The remedy is not in every case that they're dragged to a hearing where they're told, we've scheduled a hearing, and the only way to get out of it is to cancel it, where I guess the person can just say, I'm not going to show up. It's an opportunity for a hearing. It's an opportunity for a hearing. That's what due process requires. Judge, I don't know how they do it with welfare or other agencies. Perhaps we should have studied that some more. I don't know if they're asked to come to a hearing before they're suspending their welfare benefits. I think that's probably likely. Here, there's no hearing before. There's no hearing before because this court said that is not constitutionally required. Right. But in the welfare area, if there is a hearing before, then there's less reason for a post-suspension or post-revocation hearing. Again, we're engaged in speculation. All right. Thank you. Thank you very much. Thank you. Appreciate it. We'll reserve the decision. That concludes today's oral argument calendar. I'll ask the clerk to adjourn the court. The court stands adjourned.